IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **SAP AMERICA, INC.,**<br><br>　　**Plaintiff,**<br><br>　　*v.*<br><br>**INVESTPIC, LLC,**<br><br>　　**Defendant.** | **Case No. 3:16-cv-02689-K** |

**SAP AMERICA, INC.'S REPLY IN SUPORT OF**
**MOTION TO FIND CASE EXCEPTIONAL AND AWARD FEES**

It is the bold litigant that commits the same misconduct in arguing against a claim for fees that constituted a basis for that claim. Just as InvestPic's briefing on invalidity ignored the seminal *Flook* case cited by SAP (and the PTO), InvestPic's fees opposition completely ignores the broad basis for SAP's fees request: that InvestPic pursued threats of litigation and actively litigated when it knew or should have known that the '291 Patent was invalid. No doubt hoping to distract the Court from the larger legal and ethical issues, InvestPic repeatedly characterizes SAP's motion as based solely on InvestPic opposing SAP's motion to invalidate the patent.

To be clear, SAP seeks fees based on all aspects of InvestPic's attempts to assert a patent that it knew or should have known was invalid as claiming nothing more than math. Either alone or coupled with the misconduct of InvestPic's principals and counsel (the fruits of which InvestPic's counsel attempted to leverage), this case is exceptional.

A.  **An exceptional case finding is warranted due to the objective unreasonableness of InvestPic's case and its litigation positions.**

The '291 Patent was demonstrably weak on its face. It claims nothing more than math, a conclusion this Court reached without any claim construction or analysis, and a conclusion InvestPic likewise should have reached prior to its enforcement campaign. Rather than rehash the many points made in SAP's opening brief that demonstrate the unreasonableness of InvestPic's enforcement campaign—and the exceptional nature of this case—SAP will address the points raised by InvestPic in its opposition.

1.  **InvestPic incorrectly attempts to recast SAP's fees request to narrow the bases on which fees should be awarded.**

InvestPic repeatedly and incorrectly states that SAP's fees motion is based on InvestPic's decision to oppose SAP's motion to invalidate the '291 patent. (Opp. Br. at 6 ("It was not 'exceptional' for InvestPic to oppose SAP's motion to invalidate the '291 patent under § 101"); *see also id.* at 1, 9, and 20). The fact that InvestPic was unreasonable in opposing SAP's motion

to invalidate is but one part of the totality of circumstances—detailed in SAP's opening brief—that make this case exceptional.

### 2. InvestPic incorrectly argues that SAP's filing of the lawsuit precludes finding the case exceptional.

InvestPic repeatedly asserts that the case is not exceptional because SAP filed this lawsuit as a declaratory judgment action. (*See* Opp. Br. at 1, 7). That SAP initiated this litigation is irrelevant to whether InvestPic's enforcement of the '291 patent warrants fees. SAP filed this action because it had a reasonable apprehension of being sued by InvestPic—based on InvestPic's express statement that its complaint would be "filed in Delaware next week." (Dkt. No. 1 at Ex. C). Notably, InvestPic did not object to SAP's complaint on the basis of lack of declaratory judgment jurisdiction, essentially conceding the reasonableness of SAP's apprehension.

Relatedly, InvestPic repeatedly asserts that its enforcement of the '291 Patent cannot be exceptional because SAP's complaint did not include a request to declare the '291 Patent invalid, stating invalidity as only an affirmative defense. (Opp. Br. at 2, 7). This point is irrelevant as (1) SAP did seek to invalidate the patent at its earliest opportunity; and (2) SAP, like any reasonable litigant faced with a clearly invalid patent, was seeking to keep open its options to challenge the patent at the Patent Office. *See* 35 U.S.C. § 325(3)(2).

### 3. InvestPic incorrectly argues this case is not exceptional because "the '291 Patent has survived years of relentless validity challenges by IBM and SAS."

InvestPic incorrectly asserts that years of successfully defending against the validity challenges of IBM and SAS provide reason to deny SAP's fees request. (Opp. Br. at 1, 2). Once again, InvestPic conceals the most relevant piece of information: none of the prior validity challenges was based on § 101—the basis on which the PTO noted the questionable validity of the '291 Patent and the basis on which this Court readily found the patent invalid.

> **4. InvestPic incorrectly argues that it "never sought a nuisance level settlement in this case or any other."**

InvestPic argues that the fact that it did not demand a nuisance level settlement from SAP or others should undermine SAP's fees request. (Opp. Br. at 3, 11, 19). The logic of this point is elusive. InvestPic seemingly believes that demanding an exorbitant amount for alleged infringement of a clearly invalid patent is more reasonable than seeking nuisance value settlements for a clearly invalid patent. Were InvestPic correct, a patentee could insulate itself from a fees award simply by demanding a high settlement rather than a low settlement.

> **5. InvestPic incorrectly argues that the statements of the PTO director did not put it on notice that its patent could be invalid.**

InvestPic argues that the comments of the Director of the U.S. Patent and Trademark Office regarding the questionable validity of its patent were not sufficient to give rise to any concern regarding the validity of its patent. (Opp. Br. at 7-8 (arguing that the Director's statement was hardly a "definitive statement that the '291 patent is 'demonstrably weak on its face,'" and focusing on the word "might" in the statement "might fail to qualify as patent eligible subject matter….")). InvestPic asks too much of the Director, who was putting InvestPic on clear notice of a potential § 101 problem during an appeal regarding other bases of invalidity. InvestPic's denial that the Director's statements put it on notice is disingenuous.

> **6. InvestPic incorrectly argues that it was not obligated to concede that the '291 Patent was invalid under § 101 because patents are presumed valid.**

Though true, the fact that patents are presumed valid does not insulate a patentee from an exceptional case finding. Were the law as InvestPic implies, fees would never be awarded in patent cases as all patents are presumed valid. As stated in SAP's opening brief, the '291 Patent claims were clearly invalid on their face for precisely the reasons stated by the PTO: "the claims would be difficult to distinguish from that in *Parker v. Flook* (cited with approval in *Alice v. CLS Bank*)

because they appear to cover little more than providing input to a processor and performing a mathematical operation on that input to provide an output." (Mot. Ex. D at n.7 (citation omitted)). InvestPic knew or should have known as much, which is one of the reasons why this case stands apart from other cases where the patents are also presumed valid.

> **7.    InvestPic incorrectly argues that the state of the law under § 101 is "unsettled," and it could not have been on notice that enforcement was unreasonable.**

InvestPic argues at length that the unsettled and uncertain nature of § 101 jurisprudence should preclude a conclusion that fees are warranted. Again, InvestPic ignores the facts at hand. While there may be uncertainty regarding the outcome of legal analysis regarding patent validity, those uncertainties exist only with regard to patent claims that are <u>not</u> in the margins. Here, the claims undoubtedly are in those margins—as made clear by the fact that the claims are directed solely to math (as conceded by InvestPic in its opposition to SAP's invalidity motion),[1] and as pointed out by the Director well before InvestPic asserted the patent against SAP.

> **8.    InvestPic incorrectly argues that SAP has not cited to a single case where a court found a case exceptional based solely on a § 101 finding.**

InvestPic argues that all cases cited by SAP involve something beyond mere invalidity, and therefore this case is not exceptional. Opp. Br. at 11. Again, InvestPic attempts to ignore much of what SAP argued in its opening brief, including notice of invalidity provided by the Director of the PTO; InvestPic's absurd $15 million demand; contact by InvestPic's counsel with SAP's executives after InvestPic's counsel spoke with SAP's counsel; InvestPic's over-aggressive discovery motion practice; and, of course, InvestPic's pretexting—dating back to 2012—to obtain

---

[1] Dkt. No. 65 at 1 ("The '291 patent claims a powerful new analytical tool for modeling financial risk using an innovative fusion of Frequentist (resampling) and Bayesian (bias parameter) paradigms."); *also id.* at 8, 10-11, 13, 16, 17-18, 19, 21, 21-22, 23, 25.

PAGE 4

litigation-related admissions outside the discovery process (discussed below). InvestPic's argument that mere invalidity is the only issue at hand is disingenuous.

**B.    An exceptional case finding is warranted due to the objective unreasonableness of litigation conduct of InvestPic's principals and separately InvestPic's counsel.**

**1.    InvestPic incorrectly argues that Mr. Miller and Dr. Varma's conduct was appropriate because "Rule 4.02 only applies to lawyers."**

InvestPic misconstrues SAP's arguments regarding the misconduct of Mr. Miller and Dr. Varma. Their conduct is exceptional irrespective of Rule 4.02. InvestPic does not dispute that conversations between Regulus, Mr. Miller, and SAP began in 2012—when Mr. Miller indicated an interest in SAP. (Mot. at 4 and Exs. E and B ("[Lee Miller] had stated right away he was interested in what SAP had to offer in this space….")). Thus, InvestPic's suggestion that the 2016-2017 conversations were unsolicited (Opp. Br. at 4) is false; it ignores Mr. Miller's own statements to the contrary nearly four years previous. Even if they were unsolicited, however, InvestPic does not dispute that Mr. Miller and Dr. Varma were aware of this litigation, as the operating manager and treasurer/inventor of InvestPic (Opp. Br. at 4), and that SAP employees participating in those conversations were not aware of the litigation (*id.* at 5-6). Mr. Miller and Dr. Varma's decision to exploit this informational deficiency for their gain in this ligation sets this case apart from other patent cases.

Next, InvestPic also does not dispute that Mr. Miller and Dr. Varma posed as interested purchasers of SAP products, pretexting for four months—all during the pendency of this case. (*See* Mot. at 7-11; Opp. Br. at 4-5). Instead, InvestPic admits that Regulus—under the guise of an interested purchaser—was provided with "information concerning [SAP's] products, including pricing and technical information." (Opp. Br. at 5). Finally, InvestPic does not dispute that it was prepared to use the material learned during those conversations as admissions against SAP during dispositive motion practice in this case, and further suggested that SAP should settle this case in

light of those purported admissions. (*See* Mot. at 11 and Ex. T at ¶¶ 3-5).

The conduct of Mr. Miller and Dr. Varma is thus exceptional irrespective of Rule 4.02 because the exceptional case inquiry is not coextensive with otherwise sanctionable conduct, but is instead viewed under the totality of the circumstances to, *inter alia*, advance considerations of compensation and deterrence. *Octane Fitness*, 134 S. Ct. at 1756-57. Here, the extrajudicial conduct of InvestPic, Mr. Miller, and Dr. Varma during the pendency of this case is unethical and worthy of deterrence.

### 2. InvestPic incorrectly relies on ABA, Restatement, and New Jersey law, to the exclusion of controlling Local and Texas Rules.

Pursuant to Local Rule CV-83.8(e), the Texas Rules of Professional Conduct apply to this case. *See* Local Rule 83.8(3). Thus, InvestPic's reliance on the ABA Rules, the Restatement of the Law Governing Lawyers, and New Jersey case law (Opp. Br. at 15) is inapposite.

InvestPic <u>does not dispute</u> that its counsel aided Mr. Miller and Dr. Varma's extrajudicial efforts to obtain information from SAP employees, in a form and format that could be used (and, in fact, was used verbatim) during discovery. (Opp. Br. at 14 and Mot. at 10). By directing the content and scope of those communications, InvestPic's counsel appears to have violated Rule 4.02, which is not coextensive with other rules of professional conduct. Rule 4.02 includes the additional provision at issue here—namely, that a lawyer "shall not communicate <u>or cause or encourage another to communicate</u> about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject." Tex. Disciplinary R. Prof. Conduct 4.02(a) (emphasis added). As confirmed by the commentary on this language, the Texas Rule clearly "prohibits communications…where, because of the lawyer's involvement <u>in devising and controlling their content, such communications in substance are between the lawyer and the represented person</u>…."

*Id.* at Comment 1 (emphasis added). Indeed, as InvestPic correctly notes, this Court has recognized the "no contact" rule is "designed to protect represented parties from the overreaching tactics of opposing attorneys" including those "orchestrated at the attorney's behest." (Opp. Br. at 15 (citing *Hancock v. Chicago Title Ins. Co.*, No. 3-07-CV-1441-D, 2009 WL 10664165, at *2 (N.D. Tex. Apr. 29, 2009))). By aiding Mr. Miller and Dr. Varma and guiding the content of their communications with SAP employees, counsel for InvestPic appears to have violated the Rule.

### 3. InvestPic incorrectly argues that the contacted SAP employees are not protected from improper contact.

The applicable Texas Rule makes clear that when dealing with an organization (like SAP), the Rule protects to "those persons presently having a managerial responsibility with an organization or entity of government that relates to <u>the subject of the representation</u>." *Id.* at 4.02(c). Here, the pretextual conversations with SAP (guided by counsel) related to the subject matter of this case (the accused products) and occurred with employees with managerial responsibility over that same subject matter.

By ignoring the actual substance of the conversations, InvestPic asks the Court to ignore both the language and spirit of Rule 4.02, and instead adopt a standard wherein it would be permissible for counsel to contact the employees of a represented party provided that they (a) are not on the Initial Disclosures, or (b) are not in-house counsel with managerial responsibility over the lawsuit itself. (*See* Opp. Br. at 5 and 16 (arguing that SAP sales employees were not "listed in SAP's initial disclosures" or "part of the litigation control group")). Texas Rule 4.02, however, does not require that the employees have control of the litigation, only that they have responsibility relating to the subject of the representation.[2] Here, SAP's employees did have such responsibility

---

[2] The phrase "control group" or "litigation control group" does not appear in Texas Rule 4.02, or in any of the Texas Rules of Professional Conduct or related commentary.

**PAGE 7**

as it was in their purview to negotiate sales agreements and aid in the design of the <u>very products at issue in this case</u>, which certainly "relates to the subject of the representation." (*See* Mot. at Exs. C, I, J, L, O, P, Q, and R; Tex. Disciplinary R. Prof. Conduct 4.02(c)). The fact that these communications related to the subject of the representation is further underscored by counsel's proposed use of the information learned during dispositive motion practice in this case. (*See* above). Indeed, counsel for InvestPic leveraged the information obtained during these conversations to influence settlement in this case. (*See* Mot. Ex. T at ¶ 5). Through deceit, InvestPic attempted to gain an advantage before this Court—an advantage that InvestPic does not dispute it intended to use during substantive motion practice.

Moreover, given the lengthy, four-month-long nature of this ruse, InvestPic cannot dispute that SAP employees and third-party contractors invested significant time, energy, and resources responding to Regulus' product inquires. (*See* Mot. Ex. C at ¶¶ 4-5). The effort and resources expended by SAP and its third-party contractors should likewise be considered under a totality of the circumstances analysis. That effort and those resources, which could have been directed toward legitimate sales efforts, were wasted in Regulus, Mr. Miller, and Dr. Varma's extended efforts to extract information from SAP for use in this litigation.

**C.     This case is exceptional and fees are appropriate jointly-and-severally against InvestPic, Samir Varma, Lee Miller, and Regulus.**

Given that their joint misconduct stands out from other cases, InvestPic, Samir Varma, Lee Miller, and Regulus should all be jointly-and-severally liable for any fees award. To that end, InvestPic does not dispute that 35 U.S.C. § 285 is stated broadly and its language does not limit liability to the actual parties to the lawsuit. (*See* Opp. Br. at 17-19). Instead, § 285 liability may be imposed on "on any person who was responsible for creating exceptional circumstances . . ., even if the person was not an original party to the action, but rather was joined in his or her sole

capacity as a third party § 285 defendant." (*See* Mot. at Ex. V and n. 7).

In response, InvestPic's argues that the Court cannot join InvestPic's owners, but provides no legal reasoning to support its position. And again, InvestPic ignores controlling Supreme Court precedent. A request for fees is wholly collateral to and separate from an adjudication on the merits. *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 200 (1988).[3] As such, SAP's request for fees is governed solely by Rule 54, and not Rule 59 or 60 as InvestPic argues (Opp. Br. at 17-18). *See Knighton v. Watkins*, 616 F.2d 795, 797 (1980) ("[A] motion for attorney's fees is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks what is due because of the judgment. It is, therefore, not governed by the provisions of Rule 59(e).").

When considering the collateral issue of fees, Rule 54(d) provides the district court with broad discretion "on a party's request" to "give an opportunity for adversary submissions." Fed. R. Civ. Pro. 54(d)(2)(C). Accordingly, this Court may add non-parties for the purpose of the collateral fee determination either under Rule 19 or under the Court's inherent authority, or otherwise provide those non-parties with an opportunity to be heard in accordance with their due process rights. *See Iris Connex, LLC v. Dell, Inc.*, No. 2:15-cv-1915-JRG, 2017 WL 365634, at *8 (E.D. Tex. Jan. 25, 2017). Here, such on opportunity should be afforded as SAP has presented this Court with at least a *prima facie* showing of an exceptional case as to third-parties Regulus, Mr. Miller, and Dr. Varma.

Moreover, based on the record before this Court, the conduct of third-parties Regulus, Mr.

---

[3] *See also FCC v. League of Women Voters*, 468 U.S. 364, 373–374, n. 10 (1984) (issue of entitlement to "attorney's fees and costs" described as "wholly collateral" to judgment on the merits).

**PAGE 9**

Miller, and Dr. Varma have all made this case exceptional. (*See* Mot. at 7-11). Regulus, Mr. Miller, and Dr. Varma's failure to disclose their connection to InvestPic during four months of pretextual conversations makes this case exceptional. Moreover, as noted above, the wasted time and effort invested by SAP and its contractors in legitimately responding to Regulus's inquiries makes this case exceptional. The conduct of these non-parties has make this case stand out from the rest and they should be held accountable for their actions.

**D.   InvestPic's request for a stay should be denied.**

InvestPic's request for a stay is unwarranted—particularly in light of its decision to enforce the '291 Patent and its refusal to entertain a previous stay request. Throughout the course of this case, InvestPic has argued to this Court that no delay whatsoever is warranted. (Dkt. No. 26 and 38). Now that InvestPic may be held accountable for its actions it should be not allowed to reverse course and entreat delay. Moreover, judicial efficiencies will be gained by an expedited resolution of SAP's fee request so that it may timely be consolidated with InvestPic's pending appeal—rather than potentially heard in two separate appeals.

**E.   The parties met-and-conferred in good faith prior to the filing of this Motion.**

As required by Local Rule CV-7.1(a), counsel for SAP conferred with InvestPic's counsel in good faith prior to filing this motion. Contrary to InvestPic's allegations (Opp. Br. at 1 and 11), counsel for SAP merely investigated whether a mutual and good faith resolution could be reached between the parties without the need for Court intervention regarding fees.

**F.   Conclusion.**

Together, the objective unreasonableness of InvestPic's positions, the conduct of its principals, and the conduct of its counsel make this case stand out from others. An exceptional case finding is appropriate on the current record. In addition, costs and fees should be awarded jointly-and-severally against InvestPic, Regulus, Mr. Miller, and Dr. Varma.

Dated:  July 6, 2017                             Respectfully submitted,

                                                           By:   */s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@winston.com
M. Brett Johnson
Texas State Bar No. 00790975
mbjohnson@winston.com
Michael A. Bittner
Texas Bar No. 24064905
mbittner@winston.com
**WINSTON & STRAWN**
2501 N. Harwood Street, 17th Floor
Dallas, Texas  75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

Kathi Vidal
California Bar No. 194971 (PHV)
kvidal@winston.com
WINSTON & STRAWN
275 Middlefield Road, Suite 205
Menlo Park, California 94025
Telephone: (650) 858-6425
Facsimile: (650) 858-6550

*Counsel for Plaintiff SAP America, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on July 6, 2017, per Local Rule CV-5.1.

                                                           */s/Michael A. Bittner*
Michael A. Bittner