**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **SAP AMERICA, INC.,** | |
| **Plaintiff,** | |
| **v.** | |
| **INVESTPIC, LLC;** | |
| **SHORE CHAN DE PUMPO LLP;** | |
| **REGULUS INTERNATIONAL CAPITAL CORP.;** | **Civil Action No. 3:16-cv-2689** |
| **ISPD, INC.;** | **JURY TRIAL DEMANDED** |
| **THE S.A.M. 2000 IRREVOCABLE TRUST;** | |
| **DR. SAMIR VARMA;** | |
| **and** | |
| **THE ESTATE OF MR. LEE MILLER,** | |
| **Defendants.** | |

## SECOND AMENDED COMPLAINT

Plaintiff SAP America Inc. ("SAP"), based on personal knowledge as to all acts or events that it has undertaken or witnessed, and upon information and belief as to all others, files this Second Amended Complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) against Defendants InvestPic, LLC ("InvestPic"); Shore Chan De Pumpo LLP; Regulus International Capital Corp.; ISPD, Inc.; The S.A.M. 2000 Irrevocable Trust; Dr. Samir Varma; and the Estate of Mr. Lee Miller (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      In this action, Plaintiff SAP sought and received judgments that: (1) SAP does not infringe any enforceable claim of U.S. Patent No. 6,349,291 ("the '291 patent") because the patent is invalid under 35 U.S.C. § 101, Dkt. No. 78 at 25–26, and (2) this case is "exceptional" under 35 U.S.C. § 285 such that SAP is entitled to the reasonable attorneys' fees it incurred in this action, Dkt. No. 102 at 9; *see also* Dkt. Nos. 102, 127, 128, and 164.   As this Court has recognized, "The Federal Circuit affirmed this Court in all respects."  Dkt. No. 196 at 2 (citing Dkt. Nos. 139, 158, 161, 178, and 181).

2.      The Court ordered InvestPic to pay SAP $679,420.46 in attorneys' fees.  Dkt. No. 164 at 16.  This $679,420.46 included fees incurred in this Court and in InvestPic's appeal of the Court's invalidity determination to the Federal Circuit up to SAP's June 6, 2018 supplemental request for fees. *Id.* at 1–3, 5; Dkt. No. 133.

3.      In this Amended Complaint, and consistent with this Court's Memorandum Opinion and Order of March 23, 2021, SAP seeks a judgment that holds Shore Chan De Pumpo LLP; Regulus International Capital Corp.; ISPD, Inc.; the S.A.M. 2000 Irrevocable Trust; Dr. Samir Varma; and the Estate of Mr. Lee Miller jointly and severally liable with InvestPic for SAP's reasonable attorneys' fees incurred in this action.  *See* Dkt. No. 196 at 20–21.  SAP also requests that the Court increase the $679,420.46 attorney-fee award to include reasonable attorneys' fees SAP incurred in InvestPic's appeals of the Court's invalidity and attorney-fee orders and legal fees SAP has incurred since the Court ordered InvestPic to pay $679,420.46 and will further incur in this Court.

## PARTIES

4.      Plaintiff SAP America Inc. is a Delaware corporation, with a place of business in Irving, Texas, within the Northern District of Texas.

5.      On information and belief, Defendant InvestPic is a Delaware limited liability company, with its principal place of business in Dallas, Texas, within the Northern District of Texas.

6.      On information and belief, Defendant InvestPic is the owner by assignment of the '291 patent, which is entitled "Method and system for analysis, display and dissemination of financial information using resampled statistical methods."  A true and correct copy of the '291 patent was attached to SAP's original Complaint as Exhibit A.  *See* Dkt. No. 1, Ex. A.  This Court has declared the '291 patent invalid under 35 U.S.C. § 101.

7.      On information and belief, Shore Chan De Pumpo LLP[1] ("Shore Chan") is a limited liability partnership that exists under the laws of Texas and has its principal place of business in Dallas, Texas.  Shore Chan has represented InvestPic throughout this litigation, issued the threats of litigation that preceded SAP's filing of this suit, and upon information and belief, continued to represent InvestPic through and after the appeal of this Court's orders.  Upon information and belief, Shore Chan was complicit at least in the actions that made this case exceptional.  This Court has found that Shore Chan is a proper and necessary party "under both Rule 19 and Rule 20."  Dkt. No. 196 at 18.

8.      According to InvestPic, ISPD, Inc. ("ISPD") is a member of InvestPic, and its address is 16 Windsor Lane, Cos Cob, CT 06807.  On information and belief, ISPD, Inc. is incorporated under the laws of Connecticut.  This Court has found that ISPD is a proper and

---

[1]      On information and belief, the name of Shore Chan was formerly Shore Chan Bragalone, LLP.  For convenience, the pleading will refer to the law firm as Shore Chan.

necessary party "under both Rule 19 and Rule 20." Dkt. No. 196 at 16. IPSD "has an ownership interest in InvestPic" and, on information and belief, was complicit in establishing and operating InvestPic as a judgment-proof company. Dkt. No. 196 at 17.

9.      According to InvestPic, the S.A.M. 2000 Irrevocable Trust is a member of InvestPic, and its address is 420 Round Hill Road, Greenwich, CT 06831. On information and belief, the S.A.M. 2000 Irrevocable Trust exists under the laws of Delaware. This Court has found that the S.A.M. 2000 Irrevocable Trust is a proper and necessary party "under both Rule 19 and Rule 20." Dkt. No. 196 at 16. The S.A.M. 2000 Irrevocable Trust "has an ownership interest in InvestPic" and, on information and belief, was complicit in establishing and operating InvestPic as a judgment-proof company. Dkt. No. 196 at 17.

10.      According to InvestPic, Regulus International Capital Corp. ("Regulus") is a member of InvestPic, and its address is 67 Holly Hill Lane, Suite 301, Greenwich, CT 06830. On information and belief, Regulus International Capital Corp. is incorporated under the laws of Connecticut. This Court has found that Regulus is a proper and necessary party "under both Rule 19 and Rule 20." Dkt. No. 196 at 16. Regulus "has an ownership interest in InvestPic" and, on information and belief, was complicit in establishing and operating InvestPic as a judgment-proof company. Dkt. No. 196 at 17.

11.      According to InvestPic, Samir Varma is an employee or officer of InvestPic, and his address is 16 Windsor Lane, Cos Cob, CT 06807. This Court has found that Dr. Varma is a proper and necessary party "under both Rule 19 and Rule 20." Dkt. No. 196 at 16. Dr. Varma "has an ownership interest in InvestPic" and, on information and belief, was complicit in establishing and operating InvestPic as a judgment-proof company. Dkt. No. 196 at 17.

12.     On information and belief, Lee Miller was a resident of Connecticut, and his estate exists under the laws of Connecticut.  As this Court has recognized, "Lee Miller . . . was the principal of InvestPic . . . involved in the funding and operation of InvestPic.  Any claim against Lee Miller is now a claim against his estate since he is now deceased."  Dkt. No. 196 at 17.  This Court has found that the Estate of Lee Miller is a proper and necessary party "under both Rule 19 and Rule 20."  Dkt. No. 196 at 16.  The Estate of Lee Miller "has an ownership interest in InvestPic" and, on information and belief, was complicit in establishing and operating InvestPic as a judgment-proof company.  Dkt. No. 196 at 17.

## <u>JURISDICTION</u>

13.     This is a complaint for relief under the patent laws of the United States, Title 35, United States Code, and under Federal and Texas law.  The jurisdiction of this Court is therefore proper under at least 35 U.S.C. § 271 *et seq.* and 28 U.S.C. §§ 1331, 1338, 1367, and 2201–02.

14.     The Court has supplemental jurisdiction over SAP's state-law claims because the same conduct that renders Defendants liable under federal law renders Defendants liable under Texas law, such that SAP's federal and Texas claims are part of the same case or controversy under Article III of the United States Constitution.  That conduct includes, as described in greater detail below, and as recognized by this Court, Defendants' use of InvestPic as a judgment-proof shell company designed to insulate InvestPic's principals from liability for conduct Section 285 seeks to prevent, Defendants' assertion of a clearly invalid patent, and Defendants engaging in improper self-help discovery in this lawsuit.

15.     On information and belief, InvestPic claims to own all rights, title, and interest in and to the '291 patent and claims to possess all rights of recovery.

16.     This Court has personal jurisdiction over all Defendants in this action because (1) upon information and belief, InvestPic has a principal place of business in Dallas, Texas, within

this District; (2) Shore Chan's principal place of business is in Dallas, Texas, within this district; and (3) the Defendants intentionally created minimum contacts with Texas by availing themselves purposefully of the authority of Texas law by engaging in actions, in part through their direction of Dallas-based InvestPic, during this Texas-based litigation that render them liable for SAP's attorneys' fees under Section 285 and that otherwise violate Texas state law.  Those actions are described in greater detail below.  Additionally, because InvestPic was acting as a shell corporation, any actions taken by InvestPic are fairly attributable to all Defendants.

17.    In addition, upon information and belief, Defendants, including through InvestPic, have conducted business in Texas and in this District pertaining to the '291 patent.  Upon information and belief, Defendants, including through InvestPic, have conducted business in Texas and in this District related to the licensing or enforcement of the '291 patent.

18.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c) because, among other reasons, Defendants are subject to personal jurisdiction in this judicial district, InvestPic has conducted business in this District, the other Defendants have conducted business in this District through InvestPic, and/or because a substantial part of the events or omissions giving rise to the claims herein, including the litigation-related conduct that rendered this case exceptional under Section 285, occurred in this District.

19.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c) because, among other reasons, the relief sought by way of the Amended Complaint against Defendants was awarded by this Court based on action taken in this District and/or otherwise in or through actors in this District.

## **BACKGROUND**

20.    At some point prior to the actions that gave rise to the relief sought herein, one or more Defendants formed InvestPic as "a sham or shell entity . . .  designed and intended to avoid

liability."  Dkt. No. 196 at 11.  Upon information and belief, the owners of InvestPic included Regulus, ISPD, the S.A.M. 2000 Irrevocable Trust, Dr. Samir Varma, and Lee Miller (now the Estate of Lee Miller).

21.     As the Court found, "the members of InvestPic made InvestPic judgment-proof and insulated themselves from any liability caused by their actions."  *Id*.  As the Court has recognized, "InvestPic keeps a near zero balance in its bank accounts at practically all times."  Dkt. No. 196 at 10.  The Court further explained that:

> when InvestPic had or expected expenses, its members would "loan" InvestPic an amount of money that was sufficient to cover those expenses.  The money would be deposited into InvestPic's bank account and almost immediately be withdrawn as payment for those expenses.  The money would go in and out of InvestPic's account so quickly that InvestPic's bank account balance remained essentially at zero.

*Id.* (internal citations omitted).

22.     At some point either before the formation of InvestPic or thereafter, Shore Chan became complicit in the actions of InvestPic, including by being retained to represent InvestPic in at least this matter.  Upon information and belief, Shore Chan and the other Defendants each had a stake in the outcome of InvestPic's patent-assertion campaign and each worked in concert, behind the sham entity InvestPic, to engage in the activity this Court found to be exceptional.

23.     In 2012, Lee Miller contacted SAP under the pretext of being interested in SAP's products, and he and Defendants engaged in self-help discovery to gather information to use against SAP in patent-infringement proceedings and "settlement discussions."  *See* Ex. A, July 20, 2012 Sales Lead Information Form ("He [Lee Miller] had stated right away he was interested in what SAP had to offer in this space because he has been in contact with several other vendors and has not yet found a solution that will fit his organization . . . They have looked into several vendors, IBM being the main one."); Ex. B, Declaration of Cindy Saroya at ¶ 2.  When Mr. Miller contacted

SAP, he did not disclose his interest in InvestPic or the '291 patent even though Defendants had already begun their campaign to extract settlements by enforcing the '291 patent (at that point, at least against IBM and SAS).  *See InvestPic LLC v. Algorithmics (US) Inc., et al.*, No. 1:10-cv-1028-RGA, Dkt. No. 1 (D. Del. Nov. 24, 2010).

24.     While the *Algorithmics* case was stayed pending reexamination proceedings, Defendants learned information from which they knew or should have known the '291 patent was invalid and unenforceable.  As part of those reexamination proceedings, in November 2015, the United States Patent and Trademark Office ("PTO") filed an appellate brief with the Federal Circuit in which the Director of the PTO observed that the claims of the '291 patent were "difficult to distinguish" from the claims rendered patent ineligible under 35 U.S.C. §101 in *Parker v. Flook*, 437 U.S. 584 (1978).  *See* Ex. C, Corrected Brief for Appellee-Director of the United States Patent & Trademark Office in Fed. Cir. Appeal No. 2015-1502 (Reexamination No. 90/012,366) at 32 n.7 (Fed. Cir. Nov. 9, 2015).  The Director indicated that InvestPic should consider addressing the patent-eligibility of the '291 patent in InvestPic's pending reissue application.  *See id*.  The Director stated,

> Although neither the Examiner nor the PTAB rejected InvestPic's claims under 35 U.S.C. § 101, the Director notes that these claims might fail to qualify as patent-eligible subject matter under case law that has developed after the close of examination in this case.  In this regard, but for the use of parallel processors (two generically-recited computers instead of one), **the claims would be difficult to distinguish from that [*sic*] in *Parker v. Flook*, 437 U.S. 584 (1978)** (cited with approval in *Alice v. CLS Bank*, 134 S. Ct. 2347, 2358–59 (2014)), because **they appear to cover little more than providing input to a processor and performing a mathematical operation on that input to provide an output**.  InvestPic may wish to consider addressing this § 101 issue in its currently pending reissue application.  *Cf.* 37 C.F.R. § 1.552(c).

*Id.* (emphases added).  InvestPic ignored that admonition.

25.     On information and belief, Shore Chan became aware of, or should have become aware of, the Director's statements above around the time the Director filed the brief containing the statements.  Indeed, as the 2010 Complaint in the *Algorithmics* case shows, Michael Shore had been representing InvestPic in Defendants' attempts to enforce the '291 patent since 2010.  *See InvestPic LLC v. Algorithmics (US) Inc., et al.*, No. 1:10-cv-1028-RGA, Dkt. No. 1 (D. Del. Nov. 24, 2010) (showing that Michael Shore signed InvestPic's Complaint against Algorithmics).

26.     Indeed, Shore's complicity with InvestPic and Regulus extends beyond his action. Shore's law firm shares an address with InvestPic.  Ex. D, InvestPic's Texas Comptroller Certificate; Ex. E, Screenshot of Shore Chan Website.  Shore also filed a patent application with Dr. Varma that is assigned to another Regulus-related entity "Reconstructor Holdings," which, like InvestPic, ISPD, S.A.M. 2000, Mr. Miller, and Dr. Varma owns.  Moreover, Shore Chan represented Reconstructor Holdings in patent litigation. See Ex. F, Docket, *Reconstructor Holdings LLC v. Ayasadi Inc.*, No. 3:16-cv-00892 (N.D. Cal. July 6, 2016).

27.     Despite being aware of the '291 patent's infirmities and failing to address them, on September 9, 2016, Michael Shore sent SAP's CEO a letter accusing SAP of infringing the '291 patent.  The letter stated, "Now that the '291 Patent claims have been established as valid, no reason exists to further delay enforcing it against SAP."  Ex. G, September 9, 2016 Letter. Defendants sent nearly identical letters to other companies, including at least Rockwell Automation:

Dear Mr. Moret,

Shore Chan DePumpo LLP represents InvestPic, LLC ("InvestPic"), the assignee of U.S. Patent No. 6,349,291 ("'291 patent").

Rockwell Automation is selling, offering to sell, using and making infringing articles, including Arena Simulation Software and other similar products (the "Products"). The Products are covered by multiple claims of the '291 patent.

This letter serves as a formal notice to Rockwell Automation regarding the existence of the '291 patent and InvestPic's contention that Rockwell Automation's activities infringe the '291 patent. Enclosed please find a copy of the '291 patent.

The '291 patent's claims were recently held valid. *See In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016). Now that the '291 patent claims have been established as valid, no reason exists to further delay enforcing it against Rockwell Automation. InvestPic demands that Rockwell Automation cease its infringement of the '291 patent, preferably through acceptance of a license on fair and reasonable terms.

InvestPic appreciates your attention and looks forward to receiving by February 28, 2017 *either* an invitation to discuss license terms *or* an assurance that Rockwell Automation will cease and desist from all future infringement and agree to account to InvestPic for Rockwell Automation's past infringement.

Sincerely,

Michael W. Shore

*See* Ex. H, *Rockwell Automation, Inc. v. InvestPic, LLC*, No. 17-cv-258, Dkt. No. 1, Ex. B (E.D. Wis. Feb. 24, 2017). The demand letters relied on the same proceeding in which the PTO warned InvestPic about the '291 patent's invalidity under *Flook* but mischaracterized the overall nature of those proceedings and concealed the Director's *Flook*-related comments about the '291 patent. On September 20, 2016, SAP's in-house litigation counsel discussed the September 9 accusations with Michael Shore on a phone call. Ex. I, Affidavit of Samir Pandya. Mr. Shore insisted that he meet with SAP executives and said he would sue SAP for patent infringement unless SAP paid $15 million. *Id.* On that same day, Mr. Shore sent a letter to SAP's CEO without SAP's in-house

counsel's consent.  Ex. J, September 20, 2016 Letter.  In spite of the above statements calling into

question the '291 patent's enforceability, Mr. Shore wrote,

> I explained to Mr. Sandya [*sic*] that the '291 patent has already survived an IPR
> and reexam by IBM and SAS, has been construed broadly by the Federal Circuit
> Court of Appeals, and was supported by experts that include Nobel Prize winners
> and some of the most distinguished practitioners in the field of risk analytics. I told
> him that InvestPic chose to contact SAP before adding the company to the suits
> pending in Delaware so it could attempt to negotiate a license in light of the current
> circumstances.

*Id.*  Mr. Shore stated also,

> As a result of Mr. Pandya's conduct and statements during the call, InvestPic has
> no reason to provide him any information outside of litigation if he is the
> gatekeeper. The '291 patent is a highly complex, technical field that Mr. Pandya's
> education and background do not indicate he is likely to understand. It is doctorate
> level technology, and any meeting should include experts in the field who can have
> a meaningful interaction with the inventor, Samir Varma, PhD. A meeting with
> only Mr. Pandya, who literally invited a lawsuit to be filed and was not willing to
> listen professionally and consider the reasons for a license without litigation, is
> almost certainly a waste of time.

> InvestPic will sue SAP in Delaware and seek consolidation with the existing cases.
> If SAP wants to avoid that, it should have someone other than Mr. Sandya [*sic*]
> contact me and set up a meaningful in-person meeting in Dallas or New York.

*Id.*  Mr. Shore also emailed Mr. Pandya as follows,

---

**Pandya, Samir**

| | |
|---|---|
| **From:** | Michael Shore <mshore@ShoreChan.com> |
| **Sent:** | Tuesday, September 20, 2016 3:11 PM |
| **To:** | Pandya, Samir |
| **Subject:** | '291 Patent |

Mr. Pandya,

InvestPic accepts your invitation to sue SAP instead of having a reasonable, fact based meeting on the technical and economic merits of a license.  No reason for rational discussion to get in the way of a good lawsuit, right?  Please direct me to the person or entity that you would like copied on the lawsuit to be filed in Delaware next week. Unless you provide an alternative person or entity to receive service by agreement, we will simply serve the registered agent.

I highly recommend Jones Day and Ken Adamo at Kirkland Ellis to defend SAP, as both have done a marvelous job for IBM and SAS thus far, spending millions in fees to get a great result: the '291 patent held valid with the Federal Circuit adopting InvestPic's claims constructions *in toto*. It never ceases to amaze me that the companies who complain the most about the patent/legal system are those that invite lawsuits by refusing to respect patents that are clearly infringed simply because they do not respect individual inventors.

See you in Delaware and

Kind regards,

Michael W. Shore

---

Ex. K, Sept. 20, 2016 Email.

      28.    On information and belief, and as shown by the demands Defendants sent other companies such as Rockwell, Defendants' demands were part of a campaign designed to abuse the patent system and the power of the federal courts by extracting value from SAP and others by accusing SAP and others of infringing the '291 patent, which Defendants knew or should have known was invalid when they demanded payment from SAP and others.

      29.    Defendants' conduct forced SAP to file this lawsuit to put an end to Defendants' practice of extorting companies like SAP by attempting to enforce against them a patent Defendants knew or should have known was invalid and unenforceable.  Dkt. No. 1.

      30.    During this lawsuit, on information and belief, at the direction of or with knowledge of the Defendants, Lee Miller and Samir Varma engaged in self-help discovery by spending

months communicating with SAP employees to gather information for this litigation about SAP's products without disclosing their relationship to InvestPic.  Dkt. No. 101 at 5.  On December 1, 2016—nearly three months after this case was filed and years after Regulus first contacted SAP—Regulus feigned to rekindle its interest in SAP's product offerings and requested a conference call to discuss SAP's products:

> From: Lee Miller [mailto:leehmiller11@gmail.com]
> >> Sent: Thursday, December 1, 2016 5:42 AM
> >> To: Javier, Kyle <kyle.javier@sap.com<mailto:kyle.javier@sap.com<mailto:kyle.javier@sap.com%3cmailto:kyle.javier@sap.com>>>
> >> Subject: Regulus International Capital
> >>
> >>
> >> In a conf today. Would like to follow up your email with a conf call tomorrow. What time is good for you. Will send you our conf call number.
> >> Lee Miller
> >> Sent from my iPhone
> >>
> >>
> >

Ex. L, SAP & Regulus International Capital Discussion Email String.  Mr. Miller did not disclose his interest in InvestPic, the asserted patent, or this pending litigation.  Instead, Mr. Miller requested an additional teleconference to discuss the technical specifics of SAP's products.  *Id.*  Mr. Miller also invited Dr. Varma to attend the technical conversation with SAP.  *See* Ex. M, SAP Follow Up Email String.  But upon information and belief, Dr. Varma was not an employee of Regulus. *See* Ex. N, LinkedIn Profile for Samir Varma.  Nevertheless, in furtherance of these pretextual conversations, Dr. Varma corresponded with SAP using a Regulus-issued email address (samir@reguluscapital.com).  *See* Ex. M, SAP Follow Up Email String.  At no time during these communications did Mr. Miller or Dr. Varma disclose their interest in the asserted patent, their role as co-owners of InvestPic, or as litigants through InvestPic against SAP.  Ex. B, Saroya Decl. at ¶ 3.  Instead, at all times, Mr. Miller and Dr. Varma held themselves out only as employees of Regulus.

31.     Regarding Defendants' improper self-help discovery efforts, the Court observed:

> The Court also agrees that this case is exceptional in regards to the manner in which Investpic litigated this matter. While this litigation was on going, Mr. Lee Miller and Dr. Samir Varma, who are both owners of Investpic, reached out to SAP sales people and pretended to be potential purchasers of SAP's product that is in contention in this matter. This was done under the guise of another company, Regulus International Capital Corp. ("Regulus"), which was operated by Mr. Miller. These two engaged in email and phone meetings with SAP's sales people in which they inquired about SAP's product. Those inquiries directly related to the infringement contentions at issue in this matter. At the same time, Mr. Miller and Mr. Varma held themselves out to be only employees of Regulus and failed to disclose their relationship with Investpic and their interest in the outcome of this lawsuit. This interaction and pretense continued for at least three months in which Mr. Miller and Mr. Varma continued to gather infringement information about SAP's product for the purpose of using this information in this litigation.

Dkt. No. 128 at 5.

32.     Mr. Miller, Dr. Varma, and SAP sales representatives scheduled and held a call on December 22, 2016 to discuss Regulus's purported project requirements and SAP's product offerings. Ex. M, SAP Follow Up Email String.

33.     Dr. Varma and Mr. Miller's communications with SAP sales personnel continued for another three months. During that time, Mr. Miller represented, "We are looking for a one stop, comprehensive provider who can also give 24/7/365 support with a proven history of reliable performance." Ex. O, Opportunity for Next Year Email String. Instead, Mr. Miller and Dr. Varma—for the apparent benefit of InvestPic and not Regulus—asked questions of SAP directed toward the accused instrumentalities and InvestPic's infringement theories in this case:

**Customers Questions:**

Our interest is in Financial Risk Analysis for highly diversified, complex portfolios of securities which include stocks, bonds, futures, currencies, commodities, complex derivative instruments etc. Philosophically, we like to model risk via empirical distributions—that is, we like to model risk by using the actual instrument data itself to calculate/estimate our risk rather than assuming what the distribution for each security might actually be. As a result, we prefer Monte Carlo Risk analysis techniques and specifically, we like resampled techniques such as the bootstrap. With these empirical distributions, we want to figure out the risk of the portfolios, as well as do multiple scenario analyses with probabilities of various scenarios as a variable input. We are open to any products that will help us do so.

All our questions apply to all the products SAP might offer that are capable of performing the analyses, including products SAP offers in combination with other vendors. We will look at any products or combinations of products you suggest.

SAP has, for example, a Market Risk Analyzer (https://goo.gl/JzFSSX). This lists user-defined procedures in simulation categories 50-53, which are called
50: Structurized Monte Carlo with user defined algorithm for generating normally distributed random numbers
51: Structurized Monte Carlo, completely user defined
52: Monte carlo bootstrapping, user-defined
53: Structurized bootstrapping, user-defined

These might possibly fit our needs.

Q: What's the difference between 52 and 53?
Q: What about portfolios? Is it true that these can handle multiple instruments that are correlated with each other?
Q: How does the bootstrap algorithm handle multiple correlated instruments? Does it preserve their correlations while bootstrapping?
Q: How is the bootstrap sample (that is, what data should you sample) specified? How is the corresponding replication generated?
Q: Can the user define the number of data points and number of periods used for the bootstrap sample generation?
Q: What predetermined functions are available in SAP for bootstrap sample replication?

*Id.  See also* Ex. B, Saroya Decl. at ¶ 6.  Miller and Varma posed these questions, in particular the questions directed to simulation categories 50–53, to help InvestPic prove infringement, as those simulation categories were included verbatim in InvestPic's infringement contentions and discovery requests:



# User-Defined Procedures

You can use simulation categories 50-53 to integrate user-defined functions into the structured Monte Carlo simulation via an RFC interface. The simulation categories are assigned to the following functions:

| Simulation Category | Features |
|---|---|
| 50: Structurized Monte Carlo with user-defined algorithm for generating normally-distributed random numbers | Generates standard, normally-distributed random numbers |
| 51: Structurized Monte Carlo, completely user-defined | Generates correlated time series of the risk factors<br>Transfers the covariance matrix |
| 52: Monte Carlo bootstrapping, user-defined | Generates correlated time series of the risk factors<br>Transfers the historic time series of the risk factors |
| 53: Structurized bootstrapping, user-defined | Generates correlated time series of the risk factors<br>Transfers the covariance matrix and the historic time series of the risk factors |

There are two example functions for the interface. You can access these via the function modules
MONTE_CARLO_USEREXIT_STEP_1 and MONTE_CARLO_USEREXIT_STEP_2:

*See* Ex. P, InvestPic Preliminary Infringement Contentions (alleging that these user-defined procedures satisfy the "bias parameter" limitation of the claims); *see also* Ex. Q, InvestPic's First Set of Requests for Production at Request No. 1 (stating that "[a]ll documentation concerning simulation categories 50–53 that are shown in the table below" and reproducing table above).

34.     Regulus also posed questions regarding SAP HANA's integration with R libraries, another instrumentality InvestPic accused in the case.    *Compare* Ex. P, InvestPic Preliminary Infringement Contentions (alleging infringement against "all SAP HANA installations that contain either PAL or R language integration") *and* Ex. Q, InvestPic's First Set of Requests for Production at Request 8 ("All internal documentation concerning R."), *with* Ex. M, SAP Follow Up Email String ("We are interested in the ability to make incorporate R language calls that you had mentioned at your last presentation.  Do you have any documentation for i) how this is done, ii) how much of R can be called (is it all of it?), iii) are any and all R libraries and packages callable and iv) is this capability installed out of the box, or is there some additional package or packages to install.").

35.     Regulus additionally inquired into and received information on specific pricing options and legal terms.  *See* Ex. R, SAP Pricing and Implementation Costs Email String; Ex. S, Clarification on Sizing Email String ("Hi Samir . . . Our team is actively working on a pricing estimate as promised . . . how many instruments do you have total that would need to be stored in the database?").

36.     Regulus's and SAP's conversations culminated in a March 3, 2017 teleconference among SAP, Mr. Miller, and Dr. Varma, in which Regulus received a detailed estimate of SAP's offerings tailored to Regulus's needs.  Ex. T, Mar. 3, 2017 SAP & Regulus Capital Technical Discussion Email String.

37.     Additionally, Shore Chan knew about, and on information and belief, encouraged Miller and Varma's conduct.  During a discussion on April 4, 2017, Michael Shore informed SAP's counsel of the conversations and indicated that InvestPic was prepared to use the material learned during those conversations as part of dispositive motion practice in this case.  Ex. U, Declaration of Thomas Melsheimer at ¶¶ 2–5.  Indeed, this Court has observed,

> SAP's counsel was not aware of that this was going on until they were informed about this by Investpic's counsel. In this conversation, Investpic's counsel informed SAP's counsel of the interactions between Investpic's owners and SAP sales representatives. Investpic's counsel also asserted that Investpic intended to use the information in Investpic's motion practice in this case.

Dkt. No. 128 at 5–6.

38.     After learning of these conversations, SAP served a third-party subpoena on Regulus for documents and testimony, which Regulus refused to answer.  Ex. V, Apr. 26, 2017 Third-Party Subpoenas to Regulus International Capital Corp.

39.     In this lawsuit, SAP moved for Judgment on the Pleadings on the grounds that the '291 patent is invalid under 35 U.S.C. § 101.  Dkt. No. 86.

40.     InvestPic continued to ignore the PTO's warnings about the '291 patent's invalidity.  InvestPic's opposition to SAP's Motion for Judgment on the Pleadings did not cite, discuss, or mention the Supreme Court's *Parker v. Flook* decision, nor did InvestPic's opposition discuss how or why the '291 patent claims are different from those in *Flook*.  *See generally* Dkt. No. 65.

41.     The Court relied on *Flook* to declare the '291 Patent invalid under Section 101. The Court reasoned,

> The claims of the '291 Patent are difficult to distinguish from the claims in *Flook* and from the Supreme Court's example of a claim that calculated the circumference of a circle.  The claims of the '291 Patent are likewise directed toward an abstract idea because the claims attempt to encompass the result or effect of a mathematical

> formula, which in this case is the use of statistical analysis formulas to calculate
> financial data models.  The independent method claims of the '291 Patent are
> not directed toward a specific means or method that improves the relevant technology,
> but they are directed toward the result or effect of the abstract idea.  This is true
> whether the claim elements are viewed individually or as an ordered combination.
> Either way, the claims are ultimately directed toward the result of the mathematical
> calculations.

Dkt. No. 78 at 16–17.  The Court ultimately found "that all of the claims of the '291 Patent are

invalid because they are directed toward the abstract ideas of mathematical calculations and data

manipulation, and they do not contain any inventive concept that results in the claims addressing

patentable subject matter."  *Id.* at 25–26.

42.     Despite the Court's clear ruling, and despite the above warning from the PTO about

the '291 patent's unenforceability, Mr. Shore emailed counsel for SAP, "Congratulations on the

order, though I think this is the best possible record we can have for the appeal. See you in DC,

buddy."  Ex. W, May 18, 2017 Email.

43.     InvestPic then undertook a meritless appeal of the Court's invalidity decision.  Dkt.

No. 81.

44.     The Federal Circuit held that the '291 patent was invalid and affirmed this Court.

Dkt. No. 139.  The Federal Circuit stated,

> There is, in short, nothing "inventive" about any claim details, individually or in
> combination, that are not themselves in the realm of abstract ideas. In the absence
> of the required "inventive concept" in application, the claims here are legally
> equivalent to claims simply to the asserted advance in the realm of abstract
> ideas—an advance in mathematical techniques in finance.  Under the principles
> developed in interpreting § 101, patent law does not protect such claims, without
> more, no matter how groundbreaking the advance.  An innovator who makes
> such an advance lacks patent protection for the advance itself.

*Id.* at 18.  The Federal Circuit denied InvestPic's motion for en banc rehearing.  Dkt. No. 158.

45.     InvestPic then appealed the Court's and the Federal Circuit's invalidity

determination to the Supreme Court.  Case No. 17-2081, *InvestPic, LLC v. SAP America, Inc.*,

Dkt. No. 80 (Fed. Cir. March 4, 2019). The Supreme Court denied InvestPic's petition for a writ of certiorari. Case No. 17-2081, *InvestPic, LLC v. SAP America, Inc.*, Dkt. No. 81 (Fed. Cir. June 24, 2019).

46.     Given Defendants' unreasonable attempts to enforce a patent Defendants should have known was invalid and Defendants' improper self-help discovery, SAP moved the Court to find this case exceptional under Section 285 and to order InvestPic, Regulus, Miller, and Varma to pay SAP's attorneys' fees. Dkt. No. 86.

47.     Mr. Shore complained to SAP's counsel that SAP's motion under Section 285 was frivolous:

> I understand that your client has instructed you to file a request to have the case deemed exceptional under Sec. 285. InvestPic obviously opposes that motion, believes it is frivolous and your call proved it was intended solely to harass and intimidate. In the call, you offered to forego the motion if InvestPic would agree to a "walk away settlement" and stated that although you did not believe the motion was frivolous when I called it that, you did admit "these types of motions are a longshot" and that although a Sec. 285 motion "might arguably lack merit, a lack of merit does not mean frivolous" and "the question of merit is for the court". We both know what is going on here. This is precisely the type of extortionate threat that creates an exceptional case FOR INVESTPIC. Please be assured that InvestPic will seek its fees and costs from SAP if such a motion is filed.

Ex. X, May 30, 2017 Email. After SAP filed its motion, Mr. Shore emailed counsel for SAP that the motion was "[r]idiculous, and frivolous." Ex. Y, June 1, 2017 Email.

48.     The court declared this case exceptional because of InvestPic's litigation position and conduct during this case, and the Court concluded that "considering the totality of the circumstances regarding Investpic's litigation position in this matter and regarding Investpic's manner of litigating this case, the Court finds that the case is exceptional because it stands out in both of these aspects." Dkt. No. 101 at 9.

49.     As to InvestPic's litigation position, the Court stated,

considering the totality of the circumstances regarding Investpic's litigation position in this matter, including the facts that the USPTO warned Investpic that the claims were likely invalid, that the USPTO noted that another review of the patent was ongoing and available to review the subject matter issue, that Investpic ignored this warning and invitation to properly review the issue, and that Investpic instead continued to vigorously attempt to enforce the patent claims the Court finds that Investpic's litigation position in this matter supports a determination that the case is exceptional.

*Id.* at 4–5.

50.     As to InvestPic's conduct in this case, the Court found "that the manner in which Investpic litigated this case and in particular the manner in which Mr. Miller and Mr. Varma conducted self-help discovery under a pretense is sufficient to support a finding that this case is exceptional." *Id.* at 8.

51.     Because InvestPic's conduct rendered this case exceptional under Section 285, the Court ordered InvestPic to pay SAP's attorneys' fees.  Dkt. No. 101 at 9; Dkt. No. 79; Dkt. No. 128; Dkt. No. 164.

52.     Mr. Shore responded to the Court's order by emailing SAP's counsel, along with a litany of complaints about the Court's order, that "[t]here is no legal or factual support for the Order, and it will be reconsidered or reversed on appeal."  Ex. Z, September 8, 2017 Email.  Shore indicated also that InvestPic would ask the Court to reconsider its Section 285 order.

53.     InvestPic moved for reconsideration of the Court's Section 285 order, Dkt. No. 105, but the Court denied InvestPic's motion, Dkt. No. 127.

54.     Defendants appealed the Court's attorney-fee award.  Dkt. No. 167.  The Federal Circuit affirmed (in a summary, per curiam opinion) this Court's decision that InvestPic's conduct rendered this case exceptional under Section 285 and the Court's order that InvestPic pay SAP's attorneys' fees.  Dkt. No. 178.  The Federal Circuit denied InvestPic's motion for rehearing.  Dkt. No. 180.

55.      InvestPic never posted a supersedeas bond with the Court to stay enforcement of the Court's Judgment while InvestPic's meritless appeals were pending.  Dkt. No. 178.  On information and belief, Defendants' failure to post a supersedeas bond further shows that Defendants did not care whether InvestPic faced a money judgment and therefore evinces Defendants' scheme of evading judgment.

56.      Because InvestPic never posted a supersedeas bond, SAP obtained a writ of execution from the Court to enforce the Court's fee judgment against InvestPic.  Dkt. No. 169.

57.      InvestPic has not satisfied the judgment, nor does it have the resources to do so.

58.      SAP first served the writ at the address InvestPic provided to the Texas Comptroller General.  This address is also the address of Shore Chan, and InvestPic admitted in post-judgment discovery that this was the address of InvestPic's only office.  Dkt. No. 171.  After InvestPic's attorneys refused to accept service of the writ, SAP served the writ on InvestPic's registered agent in Delaware, InvestPic's state of formation.  Dkt. No. 172.  Not a single dollar of the judgment has been paid by InvestPic to date.

59.      InvestPic has not paid the judgment, nor can it given that Defendants set InvestPic up as an assetless shell to avoid liability resulting from their improper patent-litigation practices. Indeed, the Court has observed that "InvestPic keeps a near zero balance in its bank accounts at practically all times."  Dkt. No. 196 at 10–11.  On August 27, 2019, InvestPic offered to pay SAP all InvestPic's "non-exempt property and assets."  Ex. ZZ, August 27, 2019 Email.  InvestPic's offer to SAP illustrates Defendants' use of the judgment-proof InvestPic as a vehicle for avoiding the consequences under Section 285 of their unreasonable patent-litigation practices and liability.

60.      After learning that Defendants set up InvestPic to insulate themselves from liability arising from their improper patent-litigation practices, and their pattern of using a patent they

should have known was invalid and unenforceable to extort companies like SAP, SAP asked the Court to reopen this case for the opportunity to argue that the Defendants are all responsible for the conduct that the Court found made this case exceptional under Section 285 and that the Court should hold Defendants jointly and severally liable for the Court's attorney-fee award.  Dkt. No. 182.

61.     The Court ruled that the case should be reopened and the non-InvestPic Defendants joined to give SAP the opportunity to show that Defendants should be jointly and severally liable under Section 285 for the attorneys' fees SAP has incurred in this action.  Among other things, the Court stated,

> With InvestPic owning essentially no assets and maintaining a near-zero balance in its bank account, the members of InvestPic made InvestPic judgment-proof and insulated themselves from any liability caused by their actions.  In particular, this arrangement allowed InvestPic and the actors controlling InvestPic to act in a manner that made this case exceptional, without any fear of liability for their actions.

Dkt. No. 196 at 11.

62.     InvestPic could not have taken any of the actions that made this case exceptional without direction from and participation by the other Defendants.  Indeed, Samir Varma and Lee Miller (whose estate is now a party in this lawsuit) were the individuals responsible for the self-help discovery the Court found made this case exceptional, Dkt. No. 102 at 9, and Shore Chan was responsible for trying to use the impermissibly obtained discovery, Dkt. No. 128 at 5–6.  And the InvestPic shell entity could not have carried out Defendants' scheme without the participation of Defendants.  Similarly, InvestPic was part and parcel to Defendants' scheme, as were the other entity Defendants in this case, which, on information and belief, further insulate Lee Miller's estate and Samir Varma from liability.

63.     The only reason the Court declined to hold Lee Miller and Samir Varma liable when it declared this case exceptional was that the Court believed that a judgment against InvestPic would flow through to InvestPic's owners because of the owners' interests in InvestPic's assets and funding.  Dkt. No. 196 at 13.  The Court recently recognized, however, that its assumption that a judgment against InvestPic would flow through to its owners was incorrect because of InvestPic's lack of assets.  *Id.* The Court observed,

> The Court, in its order finding the case exceptional, declined to award fees against these individuals or to join them in the case at that time because the individuals were believed to be the primary stakeholders in InvestPic and a judgment against InvestPic alone would flow through to these individuals via their interest in InvestPic, its assets, and its funding. *See* Mem. Op. & Order (Doc. No. 164). This newly discovered evidence shows that this was incorrect. It is also material evidence to the issue of whether or not these individuals can and should be held liable for SAP attorney fees incurred in this matter under § 285.

*Id.*

## COUNT I
## DECLARATION REGARDING NON-INFRINGEMENT[2]

64.     SAP incorporates and realleges the foregoing paragraphs.

65.     InvestPic, through counsel, has alleged that "SAP America is selling, offering to sell, using and making infringing articles, including Enterprise GRC, and Access Risk Management and other similar products," which are allegedly "covered by multiple claims of the '291 patent."  Ex. G, September 9, 2016 Letter.  In the same communication, InvestPic, Shore Chan, provided "formal notice to SAP America, Inc. regarding the existence of the '291 patent and InvestPic's contention that SAP America, Inc.'s activities infringe the '291 patent."  *Id.*

---

[2]     The Court has already adjudged non-infringement.  SAP includes paragraph 65-72 of this Count I to ensure that any further judgment the Court issues contains a finding of non-infringement given that the Court set aside the previous judgment while it decides the ancillary issue of liability for and amount of attorneys' fees.  *See* Dkt. No. 196 at 20.

66.     In addition, on September 20, 2016, InvestPic, through Shore Chan, threatened SAP with an imminent lawsuit regarding the '291 patent and InvestPic's allegations of infringement "to be filed in Delaware next week."  Ex. J, September 20, 2016 Letter.  In that same communication, InvestPic, through Shore Chan, recommended defense counsel to SAP, suggested such a defense could cost "millions in fees," and suggested that the '291 patent is "clearly infringed" by SAP.  *Id.*

67.     Based on InvestPic's allegations of infringement of the '291 patent by SAP, an actual controversy has arisen and now exists between the parties as to whether SAP infringes the '291 patent.

68.     SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any enforceable claim of the '291 patent.

69.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement) and/or under the doctrine of equivalents), any enforceable claim of the '291 patent.

70.     The Court has already determined that the '291 patent is invalid under 35 U.S.C. § 101 such that SAP could not have infringed in any way any enforceable claims of the '291 patent, and any subsequent judgment in this case should embody that determination.  Dkt. No. 78.

71.     InvestPic's appeals of the Court's invalidity determination failed.  *See supra* ¶¶ 43–45.

72.     Accordingly, SAP is entitled to a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually

or jointly) or indirectly (whether contributorily or by inducement) and/or under the doctrine of equivalents), any enforceable claim of the '291 patent.

73.    Moreover, SAP is entitled to its reasonable attorneys' fees in connection with this exceptional case, and such fees should be borne jointly and severally by all Defendants.

74.    Under 35 U.S.C. § 285, "court[s] in exceptional cases may award reasonable attorney fees to the prevailing party."

75.    The Court has already declared this case exceptional under 35 U.S.C. § 285 and ordered InvestPic to pay SAP the attorneys' fees it incurred in this action.  Dkt. No. 164.

76.    InvestPic's appeal of the Court's Section 285 award failed.  *See supra* ¶ 54.

77.    In addition to continuing to hold InvestPic liable for SAP's attorneys' fees, the Court should adjudge that the Defendants other than InvestPic are jointly and severally liable with InvestPic for the attorneys' fees SAP has incurred in this action because, as discussed above, the Defendants other than InvestPic are responsible for, directed, and participated in the conduct that makes this case exceptional under Section 285.

<u>**COUNT II**</u>
<u>**DECLARATION OF INVALIDITY UNDER 35 U.S.C. § 101**[3]</u>

78.    SAP incorporates and realleges the foregoing paragraphs.

79.    Under 35 U.S.C. § 101, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

---

[3]    The Court has already adjudged invalidity.  SAP includes paragraphs 79-82 of this Count II to ensure that any further judgment the Court issues contains a finding of invalidity given that the Court set aside the previous judgment while it decides the ancillary issue of liability for and amount of attorneys' fees. *See* Dkt. No. 196 at 20.

80.     As this Court has already declared, the '291 patent is invalid under Section 101. Dkt. No. 78.

81.     InvestPic's appeals of the Court's invalidity determination failed. *See supra* ¶¶ 43–45.

82.     Accordingly, SAP is entitled a declaration by the Court that the '291 patent is invalid.

83.     Moreover, SAP is entitled to its reasonable attorneys' fees in connection with this exceptional case and such fees should be borne jointly and severally by all Defendants.

84.     Under 35 U.S.C. § 285, "court[s] in exceptional cases may award reasonable attorney fees to the prevailing party."

85.     The Court has already declared this case exceptional under 35 U.S.C. § 285 and ordered InvestPic to pay SAP the attorneys' fees it incurred in this action.  Dkt. No. 164.

86.     InvestPic's appeal of the Court's Section 285 award failed. *See supra* ¶ 54.

87.     In addition to continuing to hold InvestPic liable for SAP's attorneys' fees, the Court should adjudge that the Defendants other than InvestPic are jointly and severally liable with InvestPic for the attorneys' fees SAP has incurred in this action because, as discussed above, the Defendants other than InvestPic are responsible for, directed, and participated in the conduct that makes this case exceptional under Section 285.

## <u>COUNT III</u>
## <u>PIERCING THE CORPORATE VEIL</u>

88.     SAP incorporates and realleges the foregoing paragraphs.

89.     Under Tex. Bus. Org. Code § 21.223(b) and Tex. Bus. Org. Code § 101.002, an obligee of a corporation or limited liability company may hold a beneficial owner, shareholder, or member of such entity liable for the acts of such entity if the beneficial owner, shareholder, or

member used the entity to perpetrate actual fraud on the obligee for the benefit of the beneficial owner, shareholder, or member.

90.     Under Delaware law, veil piercing is appropriate when the corporate structure causes fraud or similar injustice. *DG BF, LLC v. Ray*, 2021 WL 776742, at \*26 (Del. Ch. March 1, 2021).

91.     As discussed above, the Defendants who/that own InvestPic, and the Defendants who own the owners of InvestPic that are entities, used InvestPic and the entities that own InvestPic to perpetrate fraud and injustice on SAP for Defendants' benefit.  Defendants are therefore liable under Section 21.223(b) and/or Delaware law for InvestPic's improper conduct.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, SAP asks this Court to enter judgment in SAP's favor and against Defendants by granting the following relief:

a)     a declaration that SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement) and/or under the doctrine of equivalents), any enforceable claim of the '291 patent, which the court has already found;

b)     a declaration that the '291 patent is invalid under 35 U.S.C. § 101; a permanent injunction restraining Defendants and their respective officers, agents, servants, employees, attorneys, and any other persons acting on their behalf or in concert with them, from charging or threatening, orally or in writing, that the '291 patent has been infringed by SAP under any subsection of 35 U.S.C. § 271, which the court has already found;

c)     an award to SAP of its reasonable attorneys' fees, costs, and all interest (including without limitation any attorney fees awards based upon 35 U.S.C. § 285) for which the Defendants are jointly and severally liable that includes the $679,420.46 the Court already ordered

InvestPic to pay and, as discussed in Paragraph 2, the reasonable attorneys' fees SAP has incurred in appeals of this Court's orders, including fees incurred in the federal courts of appeals and the Supreme Court of the United States, and the reasonable fees SAP has and will incur in this Court after the Court ordered InvestPic to pay SAP $679,420.46; and

          d)      any such other and further relief as the Court finds just and proper.

Dated: July 8, 2021                        Respectfully submitted,

By: */s/ Thomas Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@winston.com
M. Brett Johnson
Texas State Bar No. 00790975
mbjohnson@winston.com
Michael A. Bittner
Texas Bar No. 24064905
mbittner@winston.com
WINSTON & STRAWN LLP
2121 North Pearl Street, Ste. 900
Dallas, Texas 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

Kathi Vidal
California Bar No. 194971 (PHV)
kvidal@winston.com
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, California 94025
Telephone: (650) 858-6425
Facsimile: (650) 858-6550

*Counsel for Plaintiff SAP America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on July 8, 2021, per Local Civil Rule 5.1.

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer